**Hugh C. HOLDEN, Plaintiff**

v.

**MARIETTA CORPORATION, Defendant.**

**No. 2:00CV126–M–B.**

United States District Court, N.D. Mississippi, Delta Division.

Dec. 20, 2001.

John G. Corlew, Watkins & Eager, Jackson, MS, John McQuiston, II, Evans & Petree, Memphis, TN, for plaintiff.

William R. Bradley, Jr., J.N. Raines, Jonathan C. Hancock, Glankler Brown, Memphis, TN, Benjamin E. Rosenberg, Adam J. Wasserman, Swidler Berlin Shereff Friedman, LLP, New York, NY, for, defendant.

## MEMORANDUM OPINION

MILLS, District Judge.

This cause comes before the Court on the defendant's motion of summary judgment. Upon due consideration of the parties' memoranda and exhibits, the Court is now ready to rule.

### FACTS

The plaintiff Hugh Holden was an employee of non-party Donald Rowe who owned 100% of the stock in the American Soap Company. Holden later exercised an option to acquire 10% of the stock in American Soap. Later still, the defendant Marietta Corporation purchased all the shares of American Soap from Rowe and Holden in exchange for (among other things) shares in Marietta itself. Two years later, it was discovered and disclosed that Marietta's financial condition had been misstated. Consequently, Marietta's stock dropped, making the stock given to Holden and Rowe less valuable than it appeared to be when the transaction occurred.

Rowe then brought suit against Marietta in Tennessee. Holden assisted Rowe in preparing for the suit and eventually testified on his behalf, but Holden was not actually a party to the Rowe litigation. After a non-jury trial, the Tennessee district court held in favor of Rowe and awarded him $188,840, the difference between Rowe's share of American Soap stock and the value of the consideration received by Rowe.

Later still, Holden brought his own private action against Marietta in Mississippi, raising substantially the same claims that Rowe raised but also adding a claim under the Mississippi Securities Act. Marietta now brings this motion for summary judgment, arguing that Holden cannot possibly prove fraud against it because he was a minority shareholder. Consequently, he did not sell his shares in reliance on any misrepresentations by Marietta. Rather, Holden sold his shares because Rowe did first and Holden did not wish to be frozen

out as a minority shareholder. Alternately, Marietta argues that even if there is a genuinely disputed material fact as to whether Holden can prove Marietta defrauded him personally, Holden is still barred by collateral estoppel from seeking more in damages than 10% of the damages Rowe received in the Tennessee litigation because Holden himself only held 10% of the stock.

## *LAW*

### I. SUMMARY JUDGMENT.

Summary judgment is proper when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.C.P. 56(c). Marietta's argument is that once Rowe made the decision to sell his 90% of the company, Holden had to sell his own 10% because those stocks would have been worthless otherwise. Therefore, Holden could not have sold his shares in reliance on any statements by Marietta, an essential element of a fraud claim.

■ In response, Holden has submitted an affidavit stating inter alia that he would not have sold his shares had he known of Marietta's misrepresentations. Furthermore, Holden asserts that Rowe relied on his judgment in business matters and that if Holden had opposed the transaction with Marietta, Rowe would not have sold his own shares.

The Court concludes that a genuine issue of material fact exists, thereby precluding summary judgment. Marietta will have every opportunity to prove to a jury that Holden did not actually rely on the misstatements in deciding to sell his shares.

### II. COLLATERAL ESTOPPEL.

■ Under the federal rules of issue preclusion, a party is prevented from relitigating issues provided:

(1) that the issue at stake be identical to the one involved in the prior litigation;

(2) that the issue has been actually litigated in the prior litigation; and

(3) that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action.

*Terrell v. DeConna*, 877 F.2d 1267, 1270 (5th Cir.1989) (citations omitted).

■ Collateral estoppel is typically used by one who was not a party to the prior litigation against one who was. However, in some circumstances, a party to the prior litigation can attempt to invoke collateral estoppel against one who was not a party to the prior litigation, as Marietta seeks to do here. *Terrell*, 877 F.2d at 1270. While such an application of collateral estoppel is disfavored because it denies the other party his day in court, the federal courts have recognized several situations in which a non-party can be bound by a prior judgment, including:

(1) where a non-party has succeeded to a party's interest in property;

(2) where a non-party controlled the original suit, and;

(3) where a non-party's interests were represented adequately by a party in the original suit.

*Southwest Airlines Co. v. Texas Intern. Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir. 1977). The third situation is also referred to as "virtual representation," and examples of it listed by the *Southwest Airlines* court include:

(1) American Indians bound by the actions of the U.S. government;

(2) beneficiaries bound by trustees and estate administrators;

(3) a county bound by the state;

(4) the public bound by it's local government;

(5) presidents and sole stockholders by their corporations, and;

(6) corporations by their subsidiaries.

*Id.* (citations omitted).

In *Benson and Ford, Inc. v. Wanda Petroleum Co.,* 833 F.2d 1172, the Fifth Circuit stated:

> Virtual representation demands the existence of an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues.

*Freeman* provides a good example of how narrowly the virtual representation theory is applied. In that case, the plaintiff was injured and his daughter killed in a car crash. Freeman brought suit in state court for his own personal injury but lost on a finding of no defendant negligence. He then brought suit in federal court, on behalf of himself and as representative of his wife and three other minor children, for the wrongful death of his daughter from the same accident. We affirmed the use of collateral estoppel for Freeman's own claim but reversed for his wife's and children's claims. We held that, despite his own personal role in both cases, his use of the same attorney to pursue the same claims of negligence arising out of the same accident, Freeman was not the virtual representative to preclude the other family members' claims. The holding was based on the ground that other family members had their own personal claims for wrongful death and were due their day in court.

*Id.* at 1175 (quoting *Pollard v. Cockrell,* 578 F.2d 1002, 1009 (5th Cir.1978) and citing *Freeman v. Lester Coggins Trucking, Inc.,* 771 F.2d 860, 864 (5th Cir.1985)).

In the case sub judice, while Marietta may be correct in asserting that Holden and Rowe had identical interests, there is no indication of any express or implied relationship such that Holden would have directly benefitted from Rowe's case. Certainly, any relationship between Holden and Rowe cannot be as binding as the relationship between Freeman and his own family members in the wrongful death actions discussed *supra.* In any case, Marietta's analysis ignores the fact that Holden is a Mississippi resident bringing suit in Mississippi and thus has an additional claim—the Mississippi Securities Act claim—not available to Rowe. The Court therefore concludes that collateral estoppel does not bar Holden from seeking damages in excess of 10% of Rowe's damages or even in excess of Rowe's total damages.

### III. CONCLUSION.

For the forgoing reasons, the Court finds that Marietta's motion for summary judgment should be denied. An order will issue accordingly.